**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RAMONA RAE GOMEZ,          )
    **Plaintiff,**             )
                    )
       **v.**                  )       **Case No. 1:16-cv-1433**
                    )
HAYSTAX TECHNOLOGY, INC. *et*  )
*al*,                      )
    **Defendants.**          )

## <u>MEMORANDUM OPINION</u>

Plaintiff, Ramona Rae Gomez, a 57-year old disabled female, filed this employment discrimination suit after defendants Haytax Technology, Inc. and NetCentrics, Inc. terminated her in February 2016. Plaintiff contends that defendants terminated her because of her sex, age, disability, and in retaliation for having taken protected medical leave. Plaintiff allegations include: (i) Disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, (ii) Family and Medical Leave Act ("FMLA") retaliation, in violation of 29 U.S.C. § 2615(a)(2), (iii) sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and (iv) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 623.

Following full discovery, defendant filed a motion for summary judgment. As the matter has now been fully briefed and argued, it is ripe for disposition.

# I.

The entry of summary judgment is appropriate only where there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That is the situation here. Pursuant to Local Rule 56(B) and the Rule 16(b) Scheduling Order, a motion for summary judgment must contain a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. *See Gomez v. Haystax Technology, Inc. et al*, No. 1-16-cv-1433 (E.D. Va. Mar. 8, 2017) (Doc. 16). The Local Rule and Scheduling Order further provide that the non-movant must include "a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record." *Id*. Finally, the Scheduling Order states that the "Court may assume that any fact identified by the movant as undisputed in the movant's brief that is not specifically controverted in the non-movant's brief in the manner set forth above is admitted for the purpose of deciding the motion for summary judgment." *Id*.

Both parties largely complied with Local Rule 56(B) and the Scheduling Order. Although defendants originally failed to provide a pleading enumerating in separately numbered-paragraph form all of the material undisputed facts, that error was promptly corrected. In response, plaintiff disputed a number of defendants' proposed undisputed facts, but did not address or dispute the remaining facts.

As a result, the statement of undisputed material facts listed here is based on defendants' statement of undisputed facts, the majority of which the plaintiff does not

specifically dispute. As for plaintiff's briefs that pre-date the defendants' filing of their statement of undisputed material fact, those briefs have been scoured for facts that arguably could be viewed as conflicting with the facts recited here; where such facts were found, they were either immaterial or not supported, as required, by admissible record evidence.

## A.

Plaintiff, Ramona Rae Gomez, is a 57-year old disabled woman who was employed by defendants from May 14, 2013 through March 1, 2016 as a program manager. Haystax Technology, Inc., one of the defendants, is a corporation headquartered in McLean, Virginia. Its subsidiary, NetCentrics Corporation, employed plaintiff to assist with its government contract work, mostly related to IT projects.

In May 2013, plaintiff was hired to work as a program manager for a contract with the Consumer Financial Protection Bureau ("CFPB"). During the CFPB contract, plaintiff went on medical leave for hip surgery from September 13 through November 24, 2014. Although plaintiff generally performed her work satisfactorily, NetCentrics president, Cynthia Barreda, hoped that plaintiff would be able to grow the CFPB work.

When the CFPB contract came up for a rebid, and while plaintiff was out on medical leave, NetCentrics failed to win the rebid on the contract. On October 21, 2014, while plaintiff was still on medical leave, she was reassigned to a new contract, known as the Network Stabilization Contract. Specifically, plaintiff was assigned to work as a senior program manager on Task D. When plaintiff returned from medical leave on

November 24, 2014, she began working as a senior program manager, and continued to work on Task D until September 2015.

On April 21, 2015, during her assignment to Task D, plaintiff informed NetCentrics that she was scheduled to have hip surgery on December 11, 2015, and would be out of work for approximately six weeks. NetCentrics approved plaintiff's request for leave at that time.

In June 29, 2015, while plaintiff was still working as a senior program manager on Task D, NetCentrics listed plaintiff as "key personnel" on a bid for a Coast Guard contract known as the TESS contract. During that June, plaintiff assisted with the proposal for TESS.

In July 2015, NetCentrics was required to engage in a re-compete process for Task D of the Network Stabilization Contract, the contract to which plaintiff was assigned. Because NetCentrics could not re-compete as a prime contractor, it partnered with a company called Trowbridge & Trowbridge to work as a subcontractor on Task D, now renamed TED. Although Trowbridge won the contract and NetCentrics was slated to work as a subcontractor on TED, NetCentrics was given only 25 of the 45 positions it previously held on Task D. As a result, a number of NetCentrics employees would have to be removed from TED or terminated.

In September 2015, NetCentrics held a meeting with plaintiff and other employees working on Task D and gave them termination letters stating that as a result of the loss of the Task D contract, their last day would be September 30, 2015 and that they should look for alternative positions. NetCentrics ultimately terminated a number of Task D

employees, including four men, Claude Blair, Kevin Fu, Chandra Muppala, and David Whitney, and one woman, Erin Lewis.

On the same day NetCentrics held a termination meeting with Task D employees, plaintiff spoke to a supervisor about why she had received the termination letter. Plaintiff was told that she would not be terminated, but would instead continue working as "overhead" at NetCentrics headquarters until the Coast Guard contract, TESS, was won. Based on plaintiff's conversation with her supervisor, her termination letter was rescinded.

On October 1, 2015, NetCentrics won TESS and plaintiff began working on TESS. Shortly after work on TESS began, however, a Stop Work notice was issued due to a protest of the award of the TESS contract to NetCentrics. Plaintiff could not perform any more billable work on TESS, but she continued to do some work related to TESS, including creating job descriptions for various roles associated with the project. Plaintiff continued to prepare for TESS until her scheduled surgery on December 11, 2015.

Plaintiff did not return to work until January 25, 2016. When plaintiff returned, she was using crutches and could not perform manual labor. On the day plaintiff returned, Melissa Bristol emailed plaintiff, welcoming her back and requesting that she send a plan for her work for the week on TESS. Plaintiff continued to work on overhead in anticipation of the protest of TESS being lifted.

On February 16, 2016, NetCentrics was informed that it had lost TESS as a result of the protest process. Plaintiff learned about it the same day, and on February 19, 2016, Barreda met with plaintiff and instructed her to contact Caron Hummer, an internal

recruiter, to determine if alternative positons within NetCentrics were available. Barreda also told plaintiff that if she could not find another position within the company, she would be terminated at the end of the month.

On February 19, 2016, plaintiff met with Hummer to look for other jobs within the company and Hummer indicated that there were no jobs available at her level. After that meeting, plaintiff left NetCentrics and did not return to work until her out-processing on February 26, 2016. On February 29, 2016, plaintiff was given her termination memo and was offered four weeks' severance. On March 1, 2016, NetCentrics president Barreda terminated plaintiff.

## B.

Plaintiff points to the treatment of a number of other employees at NetCentrics as evidence that plaintiff was terminated for discriminatory reasons, and as such a brief statement of the facts concerning those employees is necessary.

1. Courtney Davis ("Davis") was hired as a Software Development Project Manager/Deputy Program Manager on Task D in January 2013 at a salary of $118,000. Davis worked with plaintiff on Task D. On September 29, 2015, Davis was informed that Task D was ending on September 30, 2015 and that her last day would be September 30, 2015 unless she found another position. During September and October 2015, as Task D was being terminated, Davis began working on a proposal for a contract with U.S. Securities and Exchange Commission ("SEC"). Davis was allowed to stay on overhead while NetCentrics awaited the resulted of the SEC bid.

NetCentrics ultimately lost the SEC bid, but at the client's request Davis was reassigned to work as a Deputy Program Manager on Task B of the Network Stabilization contract.

2. Jill Czelusniak ("Czelusniak") worked as a program manager on Task B of the Network Stabilization contract. On September 16, 2015, the client asked that Czelusniak be removed from that position, and NetCentrics terminated her.

3. Darryl Yaplee ("Yaplee") was hired on May 11, 2015 as a program manager on Task D at a salary of $150,000. When NetCentrics lost Task D on September 29, 2015, Yaplee was transferred to work on overhead at NetCentrics headquarters. Yaplee helped NetCentrics to finish up some of the work on closing the Task D contract and transitioning Task D to the new company taking it over. Yaplee was allowed to stay in a temporary position on overhead until April 1, 2016. Though Yaplee was originally scheduled to be terminated in March 2016, he was allowed to stay to continue his work assisting with the Task D transition.

4. Carver Pace ("Pace") applied for and was offered a position as a Cyber Security program manager on February 8, 2016. Pace was offered this position in part due to his extensive cyber security experience

5. Matt Parsons ("Parsons"), another employee, was hired in January 2016 to work as a program manager on the Coast Guard contract, TESS. Parsons only accepted the job at NetCentrics because he was promised that if TESS

was lost NetCentrics would find him another position at the company. Following the termination of TESS, Parsons was reassigned to a Senior Account Executive position at NetCentrics headquarters, a position that NetCentrics felts plaintiff was not qualified for.

6. Susan Kuiler ("Kuiler") was hired to work as a program manager at NetCentrics in July 2014. Kuiler, just like plaintiff, had hip surgery during her time at NetCentrics. In 2015, the contract Kuiler was working on was terminated. As a result, NetCentrics reassigned Kuiler to work on TED. At the request of the client, Kuiler was removed from TED and was ultimately terminated by NetCentrics.

7. Jill Czelusniak ("Czelusniak") took short-term disability leave in 2015 while working at NetCentrics as a Program Manager. In September 2015, she was terminated by NetCentrics at the request of the government client.

**II.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A "fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (internal quotation marks omitted). A "dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). The movant bears the burden of showing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the non-

moving party, to defeat the motion, must set forth specific facts showing that there is a genuine issue for trial. *Covenant Media Of SC, LLC v. City Of N. Charleston*, 493 F.3d 421, 436 (4th Cir. 2007). In the analysis, the facts must be construed "in the light most favorable" to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor. *Vannoy*, 827 F.3d at 300. Only "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff asserts claims for unlawful discrimination under Title VII, the ADEA, and the ADA based on her February 26 termination.[1] She also asserts a separate claim under the FMLA for unlawful retaliation based on her termination that occurred after taking protected medical leave in December 2015. Plaintiff does not contend that she can establish any of her discrimination claims through direct evidence of discrimination, and thus as both parties correctly agree the familiar *McDonnell Douglas* burden-shifting scheme applies here. Under the first step of that scheme, the plaintiff "has the burden to establish a prima facie case." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). If

---

[1] The crux of plaintiff's claim is that she was wrongfully terminated in February 2016. Plaintiff's Amended Complaint does include a number of other allegations, including that her veteran status was used to secure contracts, that she was transferred from contract to contract by defendants, and that she allegedly did not receive work assignments after returning from leave. For some of these allegations, it is unclear that they constitute "adverse employment actions' because they do not "affect hiring, granting leave, discharging, promoting, or compensating." *Brockman v. Snow*, 217 Fed.Appx, 201, 205 (4th Cir. 2007) (unpublished) (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981)). More importantly, plaintiff failed to exhaust these claims through the administrative complaint process. *See Gomez v. Haystax Technology, Inc. et al*, No. 1:16-cv-1433, (E.D. Va. Oct. 17, 2017) (Doc. 180). Thus, the only discriminatory action alleged by the plaintiff was her ultimate termination in February 2016, and associated with that, the failure to reassign her to any other contracts.

plaintiff can establish a prima face case of discrimination, the "burden shifts to the employer at the second step to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). The burden then returns to the plaintiff "to show that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* (internal quotation marks omitted). The plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks and brackets omitted). At the third step, "the burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Id.* at 646–47 (internal quotation marks and brackets omitted). Plaintiff's ADA claim is addressed first, followed by her ADEA claim, her Title VII sex discrimination claim, and finally, her FMLA retaliation claim.

## A.

Plaintiff contends that her termination in February 2016 violated the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge . . . [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To survive summary judgment, plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *EEOC v. Stowe-Pharr Mills,*

*Inc.*, 216 F.3d 373, 377 (4th Cir. 2000); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562 (4th Cir. 2015).

Although defendant, for summary judgment purposes, does not dispute that plaintiff has a disability and that she is a qualified individual under the ADA, the parties do dispute the third requirement of plaintiff's prima facie case, namely whether the undisputed record evidence shows a triable issue of fact with respect to whether defendants discharged plaintiff because of her disability.

The record reflects that plaintiff was terminated because the contract on which she was working ended. To overcome this, and to establish a prima facie case in this respect, plaintiff points to the reassignment to new contracts of two non-disabled individuals who worked with her on Task D. This argument fails, as the undisputed record reflects first that five non-disabled employees who worked with plaintiff on Task D were also terminated once the contract had been lost, suggesting that the defendants' proffered reason for terminating plaintiff —that the contract she was working on was terminated— was not pretextual. Moreover, this argument fails because the record establishes that plaintiff's disability, the inability to walk for long periods and to engage and vigorous physical activity, was never discussed as a reason for her termination or by anyone employed by defendants. In sum, plaintiff has no evidence of discriminatory intent beyond temporal proximity; she was terminated two months following the surgery that led to her disability.

With respect to proof via temporal proximity, the Supreme Court has stated that the "cases that accept mere temporal proximity between an employer's knowledge of

protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (internal quotation marks omitted). The Fourth Circuit has held that a gap of two months and two weeks between termination and awareness of protected activity undermines an inference of causation. *See King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003). In another case, the Fourth Circuit found that a month-long gap between leave and termination paired with an allegation that a job was given to the plaintiff as a "sham" was insufficient to permit a jury to conclude that the plaintiff was fired in retaliation for taking protected leave. *See Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 190 (4th Cir. 2017).

Based on these precedents, it is unclear whether a two month gap would be enough for plaintiff to establish that her termination was caused by her employer's awareness of her disability. Assuming without deciding that two months is enough, plaintiff's claim still fails because the defendant had a legitimate, non-discriminatory reason for terminating plaintiff, and plaintiff cannot show that those reasons were pretextual. Defendant's burden at the second step is one of production, not persuasion. *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 514 (4th Cir. 2006). Defendant satisfies that burden here because their proffered reason for terminating plaintiff—the loss of the TESS contract and the inability to afford to keep plaintiff on overhead—is a legitimate, non-discriminatory reason for terminating plaintiff's employment. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (holding that

elimination of a department was a legitimate, non-discriminatory reason to terminate an employee even where some employees were retained on staff).

The burden then shifts back to plaintiff to show pretext, which plaintiff can do "either by showing that [the defendants'] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [] discrimination." *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004) (internal quotation marks omitted). Plaintiff argues that defendants' reason for firing her is pretextual because the defendants retained Courtney Davis and Darryl Yaplee, non-disabled individuals who were originally assigned to Task D just as the plaintiff was. But the mere fact that non-protected individuals were retained is not sufficient to demonstrate that the defendants' actions were pretextual. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 n. 2 (4th Cir. 1994) (retention of a single employee in a department who was not in the protected class was insufficient demonstrate pretext); *see also Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 942 n. 6 (6th Cir. 1987) (same). The undisputed record evidence shows that five non-disabled individuals working on Task D were also *not* reassigned following termination of that contract. Only two individuals working on Task D – Davis and Yaplee – were reassigned to new positions within NetCentrics, See *supra* Part I.B. Importantly, these two individuals were hired for new jobs within NetCentrics for specific, legitimate reasons not applicable to plaintiff. Davis and Yaplee were retained for specific, legitimate reasons not applicable to plaintiff. Davis was moved to Task B as a Deputy Program Manager because the customer on that contract specifically asked for her to be assigned to that contract. Yaplee was given a temporary

position with defendants in order to assist Puckett with the transition and closure of the Task D project, but he, too, was ultimately terminated in April 2016, only a month or so after plaintiff's termination, once Yaplee's task assisting Puckett was completed. Thus, at best, the record supports a finding that one individual assigned to Task D was retained, Courtney Davis, and that retention was at the specific request of a client, not due to any discriminatory preference on the part of defendants.

Defendant has put forward "reason[s] for [terminating] plaintiff not forbidden by law," and as a result it is inappropriate to "decide whether the reason[s] [were] wise, fair, or even correct, ultimately, so long as [they] truly [were] the reason[s] for plaintiff's [demotion and termination]." *Id.* (quotation marks omitted). Indeed, the Fourth Circuit has made clear that anti-discrimination laws are "not a vehicle for substituting the judgment of a court for that of the employer," and that a court does not "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *Id.* at 298–99 (internal quotation marks omitted). Defendants' decision to terminate plaintiff and the defendant's failure to reassign her to a new contract may not have been "wise, fair, or even correct," but the facts viewed in the light most favorable to the plaintiff do not show that defendants' proffered reasons for demoting and firing plaintiff were false and that disability was the real reason for her termination. *See id.* (internal quotation marks omitted). As a result, summary judgment in favor of defendants on plaintiff's ADA claim is warranted.

**B.**

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, plaintiff must prove: (1) that she was protected by the ADEA, (2) that she suffered an adverse employment action, (3) that she "was performing [her] job at a level that met his employer's legitimate expectations" at "the time of" the adverse employment action, and (4) that she was replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993): *see also Dugan v. Albemarle Cty. Sch. Bd*, 293 F.3d 716, 721 (4th Cir. 2002). Ultimately, the plaintiff "must prove, with reasonable probability, that but for the age of the plaintiff, the adverse employment decision would not have been made." *Mitchell*, 12 F.3d at 1315. Defendants do not dispute that plaintiff, who is over 40, is a member of the class protected by the ADEA, and that plaintiff performed her job at a level that met her employer's expectations. Defendants also concede that the February 2016 termination was an adverse employment action. As a result, the only disputed element of plaintiff's prima facie case is whether plaintiff's duties were *taken over* by substantially younger employees.[2] Specifically, defendants argue that plaintiff's duties

_____

[2] Defendant also argues that plaintiff cannot prove age discrimination because the new employees were not substantially younger, despite being about 11 years younger than plaintiff. As plaintiff correctly points out, there is no bright line for what age qualifies as "substantially younger." *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996). The Sixth Circuit has stated that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of [an] age discrimination prima facie

could not be reassigned as her position was terminated and that the younger employees were hired for positions that differed markedly from plaintiff's program manager position on Task D.  Defendants are correct.

Plaintiff cannot establish a prima facie case with respect to her February 2016 termination because she cannot show that her duties were reassigned to substantially younger employees.  Plaintiff does not dispute that defendants eliminated her previous program manager position because the contract to which plaintiff had been assigned ended.  Plaintiff could not have been replaced because her previous program manager position had been eliminated, and her duties could not have been reassigned either.  Thus, the fact that substantially younger individuals were hired for *different positions* does not show that plaintiff was "*replaced* by [] substantially younger worker[s]."  *Mitchell*, 12 F.3d at 1315 (emphasis added).[3]  Thus, plaintiff cannot establish her prima facie case of age discrimination on the theory that she was replaced by substantially younger employees.

---

case." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–38 (6th Cir. 2003).  In unpublished opinions, the Fourth Circuit has for the most part followed this principle.  *See, e.g., Cramer v. Intelidata Techs. Corp.*, 168 F.3d 481, at *3, 1998 WL 911735 (4th Cir. 1998) (unpublished table decision) ("The person who assumed the duties that remained following Cramer's termination was only five years younger than Cramer, and not therefore 'substantially younger' than Cramer in the absence of additional evidence."); *Rhymer v. Yokohama Tire Corp.*, 106 F.3d 391, at *3, 1997 WL 14143 (4th Cir. 1997) (unpublished table decision) ("Purdy, age 41, was substantially younger than Rhymer, who was 54.").  Ultimately, however, it is unnecessary to reach or decide whether these two individuals were substantially younger than plaintiff because plaintiff cannot show these employees replaced her, and as noted *infra* these two employees were better qualified than plaintiff for the positions for which they were hired.

[3] It is worth noting that contrary to plaintiff's contention, these two individuals were hired before plaintiff's termination, and thus could not have been hired afterwards to replace plaintiff.

Plaintiff's alternative theory is that she was entitled to be reassigned to the new positions that the younger individuals were ultimately hired for. Plaintiff bases this argument on an assessment of her own qualifications in her deposition testimony, but as the Fourth Circuit "has repeatedly explained [] it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); *see also Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). The undisputed record evidence shows that the younger individuals were selected for their positions based on the defendants' belief that they were most qualified for the positions. Carver Pace was offered the cyber program manager position in 2016, a position that the defendants have explained required extensive knowledge about cyber security. Pace was qualified because he had worked in cybersecurity before. By contrast, as the undisputed record reflects, plaintiff had no experience in cyber security. Her experience as a program manager on other IT projects, while potentially relevant in part to the cyber security program manager position, was reasonably judged by defendants to be too far removed from the more specialized nature of the cyber security role. *Evans*, 80 F.3d at 960-61 (holding that with respect to employee qualifications "'[i]t is the perception of the decision maker which is relevant' not the self-assessment of plaintiff.") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

Matt Parsons, the other individual plaintiff alleges replaced her, was hired in an overhead Senior Account Executive role. It is true that Parsons was originally hired as a program manager on TESS and was ultimately reassigned to the Senior Account

Executive role, but Parsons reassignment was the result of a prior contractual arrangement between Parsons and the defendants. Because Parsons already had a secure job at another company, he needed an assurance that he would have a job at the defendants even if the TESS contract was lost. Defendants agreed that they would find him another position if the TESS contract was lost in part because of their perception that he was well-qualified for potential overhead positions. Plaintiff presents no evidence that the decision to reassign Parsons to an overhead position, rather than move plaintiff to that position, was based on age-based discriminatory animus.

It is also worth noting that plaintiff never applied for the positions in question, and instead asserts that it was the practice of defendants to offer new positions for reassignment. As the undisputed record reflects, there is no evidence to show that the defendants' practice was to always offer reassignment. Defendants did meet with plaintiff about other program manager positions and informed her that none were available, and did not offer different positions to the plaintiff. The defendants had no duty to offer plaintiff any new positions,[4] and as demonstrated by the termination of a number of other Task D employees, it was not defendants' practice to always offer reassignment to its employees when the employee's contract was terminated. In any event, defendants' decision to place Pace and Parsons in these positions rather than to place the less qualified plaintiff in those positions is a reasonable position and it is not the

---

[4] *See Simpson*, 823 F.2d at 943 n. 6 ("When an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company").

role of the courts to question employer's decisions about personnel management. *See Dejarnette*, 133 F.3d at 299.

Even if plaintiff could establish a prima facie case of age discrimination, her ADEA claim would still fail because defendants had a legitimate, non-discriminatory reason for plaintiff's February 2016 termination and plaintiff has not pointed to any evidence in the summary judgment record to show that this legitimate nondiscriminatory reason was pretextual. As noted, even if plaintiff's claim were to proceed on a theory that she should have been reassigned to the positions the younger individuals were ultimately hired for, it is undisputed that the defendants viewed the younger employees as more qualified for their positions and the plaintiff's assertion that she was in fact most qualified is insufficient to rebut the defendants' preference. *See Evans*, 80 F.3d at 960-61.

In sum, plaintiff has failed to meet her burden of showing the defendants' judgment about the relative qualifications of the plaintiff and the two younger new hires were not the true reasons for the decision to hire those individuals instead of plaintiff, and accordingly she cannot show that age was the "determining factor" behind the decision to fire her. *Duke*, 928 F.2d at 1417. Nor can she show that there is any triable issue of fact on that issue. Accordingly, summary judgment on plaintiff's ADEA claim is appropriate.

## C.

Plaintiff contends that her termination in February 2016 violated Title VII's prohibition on sex discrimination. Here, too, the undisputed record warrants the grant of summary judgment to defendant on this claim.

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside of the protected class received more favorable treatment." *Young v. United Parcel Service, Inc.*, 707 F.3d 437, 449-50 (4th Cir. 2013). Defendants do not contest the first three elements; therefore the only argument is over whether similarly-situated employees outside the protected class received more favorable treatment.

Plaintiff's theory of sex discrimination mirrors her theory of age discrimination. She argues that Pace and Parsons were hired to replace her position, or in the alternative that Pace and Parsons were given reassignment opportunities instead of plaintiff, on account of sex as well as age. Putting aside the effect that such a hybrid theory might have on plaintiff's ability to demonstrate causation for her claims,[5] her Title VII claim fails for the same reasons that doomed her ADEA claim. Plaintiff cannot show that she was replaced by Pace and Parsons because plaintiff's position ended and because Pace and Parsons were hired for significantly different positions, and plaintiff presents no admissible record evidence to rebut the defendants' determination that Pace and Parsons

---

[5] Defendants argue that because plaintiff asserts multiple bases of discrimination, including age, sex, and disability, she cannot establish causation for any of her claims. Because plaintiff is unable to show pretext with respect to any of her claims, however, there is no need to address this issue. It is sufficient to point out that the Supreme Court has allowed claims alleging multiple forms of discrimination, *see, e.g., Phillips v. Martin Marietta Corp*, 400 U.S. 542 (1971), and that in general to prove causation a plaintiff need only show that discrimination was a motivating factor for an adverse employment action. *See* 42 U.S.C. § 200e-2(m) (plaintiff must show sex "was a motivating factor for any employment practice, even though other factors also motivated the practice"); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999) (holding disability discrimination need only be a motivating factor).

were more qualified than plaintiff for these new positions. *See* Part II.B infra. As such, summary judgment must be granted on plaintiff's Title VII sex discrimination claim.

## D.

Plaintiff's final claim is for retaliation under the FMLA. She contends that her February 2016 termination was in retaliation for plaintiff's taking medical leave following her December 2015 hip surgery. To establish a prima facie case of retaliation in violation of the FMLA, a plaintiff must establish: "(1) the employee engaged in a protected activity, such as taking FMLA leave; (2) the employer then took an adverse employment action against her; and (3) the adverse action was causally connected to the plaintiff's protected activity." *Weth v. O'Leary*, 796 F.Supp.2d 766, 780-81 (E.D. Va. 2011). Of course, even assuming plaintiff could show the prima facie case, it is still open to defendants to adduce a legitimate non-discriminatory reason that is not pretextual. Defendants do not contest the first two elements of the prima facie case, and thus the parties focus only on whether plaintiff can show the requisite causation to establish the prima facie case.

The first question is whether a causal connection exists between plaintiff's firing and her taking medical leave in December 2015. Defendants were aware of plaintiff's December surgery in April 2015 and approved her requested medical leave. Plaintiff was allowed to take leave and returned to work for two months after her surgery was completed and she was cleared to return to work. Plaintiff again argues that the two month gap between her leave and termination is sufficient to support the inference that

defendants acted in retaliation for plaintiff's taking protected leave.[6] As explained *supra*, even assuming *arguendo* that a two month gap allowed an inference of causation sufficient for plaintiff to establish her prima facie case, plaintiff's FMLA retaliation claim would nevertheless fail because defendants had a legitimate, non-discriminatory reason for terminating plaintiff and she cannot establish that those reasons were pretextual through proximity alone. Plaintiff was terminated because the contract to which she was assigned ended. Further, plaintiff was not reassigned to a new contract or rehired for a new position because other individuals were deemed to be more qualified for those positions. *See supra* Part II.A. As a result, plaintiff's FMLA retaliation claim cannot survive summary judgment.

### III.

In summary, the undisputed factual record reflects that plaintiff cannot establish a prima facie case of disability discrimination, age discrimination, sex discrimination, or FMLA retaliation, and plaintiff cannot rebut defendants' legitimate nondiscriminatory reason for the plaintiff's February 2016 termination. Furthermore, there is no basis in the record for concluding that defendants' reasons for terminating plaintiff were pretextual.

---

[6] Plaintiff points to the termination of two other employees, Susan Kuiler and Jill Czelusniak, as well to show retaliation. The circumstances surrounding their terminations and their testimony does not support plaintiff's claim. First, Kuiler never took protected leave and so her ultimate termination does not support an inference of retaliatory intent or that the defendants had a practice of terminating employees who took leave. Second, while Czelusniak did take leave in 2014 and 2015, her termination came in September 2015 at the request of the government client, not in retaliation for her having taken protected leave. Finally, both individuals and the defendants agree that Kuiler and Czelusniak were terminated for legitimate, non-discriminatory reasons. Thus, plaintiffs reliance on these other employees to establish a pattern or practice of discrimination is misplaced.

As such, a separate order will be entered granting summary judgment in favor of defendants on all counts.

The Clerk is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
November 14, 2017

T. S. Ellis, III
United States District Judge